## CELESTIN SEYER

*v.*

## LOUISA SEYER.

A marriage by one under lawful arrest for seducing a minor, under promise of marriage, is not void, as obtained by fraud or duress, nor because the woman was a prostitute and over twenty-one years of age, nor because the justice demanded excessive bail, nor because, after the woman had assented to a postponement of the marriage ceremony, the minister, who was present, and the constable who had arrested complainant, and the justice who issued the warrant, advocated its immediate performance, nor because the parties did not cohabit after the ceremony.

*S. H. McGill,* for complainant.

BIRD, V. C.

It is alleged, for cause of divorce, that the complainant was arrested upon a warrant issued by a justice of the peace on complaint of the defendant, under oath, that she, being under the age of twenty-one years, was seduced by the complainant under the promise of marriage, which arrest and subsequent proceedings very much frightened and terrified him, so that he was quite beside himself; and that so being arrested and in custody, and overcome with fear and dread, others, a minister, by the name of Maas, the constable and the justice, took advantage of him, and through threats, menaces and false statements, induced him to say that he would marry the defendant, who was a notoriously bad woman, when he did not intend at all to marry her. On the ground of fraud, therefore, he asks to have the contract of marriage annulled.

Can a court of equity so declare under the circumstances? In other words, is there such fraud established as makes it manifest that there was no lawful contract between these parties? Did the complainant marry for convenience, that is, to avoid imprisonment and a trial, or because of threats and menace unlawful in their nature?

It is not pretended but that the warrant was regularly obtained and the arrest properly made. The defendant was, therefore, lawfully in custody.

It is shown that the defendant was a prostitute of the lowest order. The complainant, however, knew this. He says so. He emphasizes what he says about her character in very strong terms. Therefore, this cannot avail him.

Then it is claimed that the defendant was over the age of twenty-one years. This the complainant undertakes to prove by the mouth of two witnesses who heard her say she was over twenty-one, prior to the arrest, and by others who heard her say she was, just prior to the marriage ceremony, in their presence and in the presence of the complainant, when the subject of marrying was being talked about. This, if it were a fact, cannot avail the complainant, for he knew it. If a fact, it would have prevented conviction, and if the justice believed it, even a holding to bail.

These failing, the charge of conspiracy must be considered. It is to be inferred that the persons engaged were the justice, the constable, the defendant and the minister. As to the justice, it appears that he issued the warrant, and when the complainant was brought before him as a prisoner, read a portion of the law to him, and told him if he didn't marry the defendant he would be obliged to confine him, unless he could give bail in the sum of $2,000. It is also claimed that the justice did not allow sufficient liberty of speech to the friends of the defendant who were present.

Construing this most favorably for the complainant, it is very far from proof of combination on the part of the justice. I do not pronounce upon the wisdom of what he said, or the manner. But he was as much in the due course of the discharge of his duty as a public officer, as he was when, as a witness, he appeared and gave evidence in this cause. The justice was not a conspirator.

The bail which he said he would require was excessive, against which the complainant had the same speedy and certain

---

Seyer *v.* Seyer.

---

remedy that every other citizen who stands accused has. The mistakes of officers of inferior tribunals are not unalterable.

As to the constable, it appears that he took the prisoner a circuitous route to the office of the justice, and on the way met the minister, who followed on to the court-room. When they first met the minister he urged complainant to marry, but he refused. The officer and prisoner proceed to the justice; the defendant, the minister and at least two friends of the complainant appeared there also. After they reached the office, the complainant and defendant had an interview, at the termination of which the defendant expressed a willingness to postpone the ceremony for a few days, giving her reasons, when the minister interposed and insisted on the immediate consummation of the work. At about this point the justice remarked to the prisoner that if he would marry the girl he would discharge him on his own recognizance, at which the constable said, "There is a chance for you now."

I cannot find that the constable conspired against the complainant. Therefore, the charge of conspiracy to injure is without foundation.

Considering the threats urged for cause, I do not think them sufficient.

Complainant says:

"During all the proceedings there, I found I could only escape going to jail by marrying her."

He married her, then, to escape going to jail. The manner and the words of others may have operated on his mind; but the court must take into consideration, as well, what he says was the impelling cause, when he speaks from the witness-stand months afterwards. And this brings the case sufficiently near to the very wise and healthy principle laid down in *Sickles* v. *Carson*, *11 C. E. Gr. 440*, for me to refer to and rely upon it.

Then it is said this marriage was never consummated, because the parties did not cohabit as man and wife after the ceremony. Although no copulation after, there doubtless was before, and therefore, in the eye of the law, a consummation. Blackstone has said that a subsequent marriage legitimates the issue. Had

the defendant's child been born alive it would have been freed from the odious epithet of "*nullius filius.*" The complainant never once denied the impeachment made. He says the constable informed him, at the time of the arrest, of the grounds thereof. He did not then, or at any other time, say that he had had nothing to do with the defendant.

And as to this branch of the case, it may be said that when the court is satisfied that ante-nuptial incontinence has taken place, the charge of threat or menace unlawful, or fraud or duress, must be most fully and satisfactorily established before the court will annul the marriage. *Carris* v. *Carris, 9 C. E. Gr. 516.*

I will advise that the bill in this case be dismissed.